Eastern Dist.
*June*, 1828.

COLE'S WI-
DOW.
*vs.*
HIS EXECU-
TORS.

---

### COLE'S WIDOW vs. HIS EXECUTORS.

APPEAL from the court of probates of the parish and city of New Orleans.

*A wife married abroad may claim* acquests and gains, *made in this state, although she never came in it.*

PORTER, J. delivered the opinion of the court. The widow of the testator claims from the executors the one half of the property, real and personal, of which he died possessed; on the ground that it was acquests and gains made during coverture.

The executors resist the action on two grounds: 1st, that the court of probates had no jurisdiction of the case: and 2nd, that the plaintiff has no legal right to any portion of the property acquired during marriage.

The testator was married to the plaintiff in the state of New-York, in the year 1810. He was then about 24 years of age, and she 63. After their marriage, they lived some time together, when the husband came to New-Orleans. After a year's residence here, he returned to New-York, and there remained with his wife for the space of three years; at the expiration of which time he again removed to

Eastern Dist.
*June*, 1828.

COLE'S WID-
OW
*vs.*
HIS EXECU-
TORS.
New-Orleans, where he resided until his death in 1827, and where he acquired the property which is the subject of the present contest. The plaintiff remained in New-York, and never was in this state. The deceased made a will, by which he bequeathed to a brother living in Ireland, nearly the whole of the property of which he died possessed.

The first question relates to the jurisdiction of the court of probates, and we think the judge below did not err in taking cognizance of the case. That court having exclusive jurisdiction of the settlement of all claims against an estate represented by an executor, and its liquidation and final settlement, it follows that it is before that tribunal a claim must be made, the rejection or admission of which is necessary to enable the succession to be closed. The other construction supposes the court not clothed with sufficient power to carry its undoubted jurisdiction into effect. It sometimes, indeed, happens, that tribunals are so defectively organised, that one is compelled to act as the assistant of the other; but it requires a very clear expression of legislative will to authorise such a conclusion; the general rule being, that where the end is conceded, the means of arriving at it are granted.

The next, and more important question, re-lates to the right of the wife in the acquests and gains.

In the case of *Saul* vs. *his creditors*, which lately underwent so much discussion in this court, principles were established, which great-ly facilitate the investigation of the rights of the parties now before us. It is true in that case, husband and wife had both resided in this state; and in the present instance, the hus-band alone lived in Louisiana. But we then determined that the law, or, to adopt the lan-guage of the jurisprudence of the continent of Europe, *the statute*, which regulated the rights of husband and wife, was *real*, not *personal;* that it regulated things, and subjected them to the laws of the country in which they were found. It follows, then, as a consequence, that property within the limits of this state, must, on the dissolution of the marriage, be distributed according to the laws of Louisiana, no matter where the parties reside; because, viewing the *statute* as *real*, it is the thing on which it operates that gives it application, not the residence of the person who may profit by the rule it contains. *Quando verba consue-tudinis, vel statuti, disponunt circa rem, tunc*

Eastern Dist.
*June*, 1828.

COLE'S WI-
DOW
*vs.*
HIS EXECU-
TORS.

Eastern Dist.
June, 1828.

COLE'S WI-
DOW
vs.
HIS EXECU-
TORS.

*de bonis judicandum est secundum consue-*
*tudinem loci, ubi res sunt situatæ: quia con-*
*suetudo afficit res ipsas, sive possideantur a*
*cive, sive a forensi. Greg. Lopez, Gloss, 2*
*Par. 4 tit. 11 l. 24, Matienso, lib. 5 tit. 9 b. 2,*
*gl. 1, n. 75.*—This doctrine has not, indeed,
been much contested in the argument; and
both parties seemed to concede, that the
case must be governed by our law.    But the
counsel for the appellants have contended that
even by it the claim of the wife cannot be
maintaned.    Their principal grounds of ob-
jection are: first, the positive legislation of the
state; and, second, the separation of the hus-
band from the wife during the whole of the
time the property was acquired.

The law of the *fuero real*, so often quoted
in this court, declares that "every thing which
the husband and wife acquire while together,
shall be equally divided between them."    It is
urged this law does not provide for such a case
as is now before the court; and that if it did, it
is repealed by the 2370th article of the Louisi-
ana code, which declares that a marriage con-
tracted out of the state, between persons who
afterwards come to live here, is also subjected
to the community of acquests and gains. with

respect to such property as is acquired after Eastern Dist.
*June*,1828·

Cole's wi-
dow
*vs.*
His execu-
tors. their arrival. The phraseology here used, it is said, indicates clearly the intention to exclude such a case as this. The statute refers to *persons* coming to reside here, not to one individual: it speaks not of *his*, or *her*, but their arrival.

The effect which the provisions in the late amendments to our code have in repealing former laws, depends on the general disposition contained in them, which declares what influence shall be given to them in this respect; and to their operation, according to the general rules of construction.

The case of the appellants can receive no support on the first ground. It is provided by the 3521st article of the Louisiana code, that the former laws of the country are repealed in every case for which it has been specially provided in this code; and they shall not be invoked as laws, even under the pretence that their provisions are not contrary or repugnant to those of this code. Now the case of one of the married couple moving into this state, is not specially provided for: the former law, therefore, in relation to it, is not repealed by this general provision. Whether, on the gene-

Eastern Dist.
June, 1828.

COLE'S WI-
DOW
vs.
HIS EXECU-
TORS.

ral rules of construction, the article already cited can be considered as abrogating a former law which, although different, is not contrary, little need be now said. The vast quantity of positive legislation which has been given to the people of Louisiana since the change of government, has called the attention of our courts repeatedly to this subject, and the principles which forbid such a conclusion have been again and again stated by this tribunal. The remarks, however, made in the case of *Saul* vs. *his creditors*, shewing that the provisions in the old code which gave a community of acquests and gains in marriages contracted *within this state*, did not repeal a former law which gave them in marriages contracted *out of the state*, when the parties afterwards moved into Louisiana, are so perfectly applicable to the instance before us, that we refer to them to show why a provision in relation to husband and wife coming to reside in this country cannot affect rules in relation to the removal of one of them.

The law of the *fuero real*, it is true, does not speak of one of the spouses coming into the country, nor does it provide for the case where both live under another government, at

the dissolution of the marriage; but it is a ne-
cessary consequence of the statute being real,
that the property acquired within the limits of
the state, and found there on the marriage be-
ing dissolved, should be governed by its pro-
visions, no matter where the parties reside.

Whether the separation, and the failure of
the wife to contribute her portion of care and
industry to the acquisition, will defeat her
right, is the next question to be examined.
And finding, on this head, nothing in the law,
its commentators, nor, in our judgment, in the
reason of the thing, which makes the living
apart, in different states, a greater objection
than a separation would be in the country
where the statute was in force, we shall exam-
ine what effect different residences would have,
if both had lived within the state of Louisiana.

On the argument, counsel went at some
length into the principles on which the com-
munity of acquests and gains was established;
and taking for the basis of such rule the care
and industry of both spouses, they drew the
conclusion that when it was established in
evidence that one of them had not, or could not
have, assisted in the acquisitions, the one so
failing to contribute, could not rightfully claim
any portion of them.

Eastern Dist.
June, 1828.

COLE'S WI-
DOW.
vs.
HIS EXECU-
TORS.

The doctrine of the community of acquests and gains, was unknown to the Roman law; and, although now common, we believe, to the greater number of the European nations, its origin cannot be satisfactorily traced. The best opinion appears to be, that it took its rise with the Germans, among whom, at a very early period of their history, the wife took, by positive law, the one third of all the gains made during coverture. It is very probable that it was the real, or presumed, care and industry of the wife, which first produced this legislation; and in an early state of society, the facts most probably fully justified such a rule. But, in this, as in many other instances, legislation survives long after the causes, which occasioned it, have ceased to exist, and the non-existence of these causes will not authorise courts of justice to refuse giving effect to the law.—There are few, we believe, who think, at the present stage of society, that the wife contributes equally with the husband to the acquisition of property. If such cases exist, they are exceptions to the general rule. And yet, in this state, neither idleness, wasteful habits, nor moral or physical incapacity, would deprive the wife of an equal share in the acquests and

gains; for our code declares that every mar-
riage, in Louisiana, superinduces of right, part-
nership, or community, in all acquisitions.—
Such, also, was the rule in Spain. *La. Code,*
2859. *Merlin's rep. verbo communaute. vol.*
*2, p.* 548. *Febrero, p.* 2, *lib.* 4, *cap.* 4, *p.* 1.
*n.* 3,

The writers who treat on this subject, make
no such exceptions as are here contended for.
On the contrary, they state that the residence
of the parties in different places will not pre-
vent the community from existing. In Spain,
indeed, if the wife never went to cohabit with
her husband, the commnnity did not com-
mence: *sin haber ido cohabitar con su ma-*
*rido,* is the case put by *Febrero,* in the pas-
sage relied on by the appellant's counsel, as in
the ancient customs of France, it began not
from the day of the marriage, but from its con-
summation. The separation spoken of by the
same author, is a legal one. It required the
judgment of an ecclesiastical court, and al-
though such jurisdiction is unknown to us, still
a judicial sentence is necessary to destroy the
community. It was so in France: it is so un-
der our code. The law wisely refuses any le-
gal effect to a voluntary separation of those who

Eastern Dist.
*June*, 1828.

COLE'S WI-
DOW
*vs.*
HIS EXECU-
TORS.

are bound by the most solemn obligations to live together. *Pothier, traite de com. par*, **1**, *n.* 22. *Ibid, par.* 3, *ar.* 494, *Febrero, par.* **2**, *lib.* 1, *cap.* 4, *nos.* 1, 2, 30 & 50.

On the particular circumstances of the case on which so much has been said at the bar, few remarks are required from the court. The match most probably originated (as such connexions generally do, where there is so great disparity of age) in cupidity on the one side, and folly on the other. He who sacrifices to avarice, has the less cause of complaint if the bargain turns out a hard one. The separation most probably was voluntary. The husband, at least, could not (if living) have urged it was not; for if he had desired his wife to live with him, it was his duty to have required her to do so.

We cannot take into our consideration the property in New-York. Our statute is real, and where the parties are not married here, can only act on the property found in Louisiana. That which is in our sister state, will follow its laws.

It is therefore ordered, adjudged and decreed, that the judgment of the probate court be affirmed with costs.

*Smith* and *Workman* for the plaintiff—
*Preston* and *Strawbridge* for the defendants.